UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMAR BURTON,

                Plaintiff,         Civil Action No. 20-13104

v.                                     Mark A. Goldsmith
                                     United States District Judge

MICHIGAN DEPARTMENT        David R. Grand
OF CORRECTIONS, *et al.*,        United States Magistrate Judge

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 18)

*Pro se* Plaintiff Lamar Burton ("Burton"), an incarcerated person, brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. On April 28, 2021, defendant Melissa Rabish ("Rabish") filed a Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 18). Burton filed a response to this motion on May 5, 2021 (ECF No. 20), Rabish filed a reply on June 1, 2021 (ECF No. 21), and Burton filed a sur-reply on June 9, 2021 (ECF No. 22). An Order of Reference was entered on June 25, 2021, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 23).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

**I.     RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Rabish's Motion for Summary Judgment **(ECF No. 18)** be **DENIED**.

**II.    REPORT**

    **A.     Background**

Burton is a Michigan Department of Corrections ("MDOC") prisoner and is currently confined at the Ionia Correctional Facility in Ionia, Michigan. He brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his First, Fourth, Eighth, and Fourteenth Amendment rights. (ECF No. 1).[1] At the time of the events at issue in his complaint, Burton was housed at the Macomb Correctional Facility ("MRF") in Lenox Township, Michigan.

In his complaint, Burton alleges that, in May 2019, Correctional Officer Rabish physically assaulted him by deliberately closing his cell door on him while he was entering his cell. (*Id.*, PageID.3). Specifically, Burton claims that Rabish told him to "get [his] ass in [his] cell" and waited until he took a step inside before slamming the steel cell door on his body. (*Id.*). He asserts that, once Rabish released the door, he stepped back out and told Rabish that he wanted to speak with a sergeant. (*Id.*). He alleges that Rabish then yelled, "Get your dumb ass in your cell," and attempted to close the cell door on him a

---

[1] On December 30, 2020, the Honorable Mark A. Goldsmith issued an order partially dismissing with prejudice Burton's complaint and claims against all defendants for failure to state a claim, except for his claims against Rabish regarding an alleged assault and retaliation. (ECF No. 6, PageID.57). Thus, the Court will limit its focus to facts relevant to the remaining claims against Rabish.

2

second time. (*Id.*). Burton claims that Rabish took these actions in retaliation for a letter he had sent her requesting assistance with his non-profit organization, which she misconstrued as a "love letter." (*Id.*, PageID.4). He asserts that he filed a grievance about being physically assaulted, but that MRF's Grievance Coordinator, E. Taylor, as part of a conspiracy with other correctional officers, rejected the grievance. (*Id.*, PageID.5). Among other relief, Burton seeks declaratory relief, compensatory damages, and punitive damages. (*Id.*, PageID.6).

Rabish now moves for summary judgment on Burton's claim against her, arguing that Burton failed to properly exhaust his administrative remedies before filing the instant lawsuit.

### B. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court

3

of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

    **C.**    **Analysis**

In her motion, Rabish argues that summary judgment is warranted on Burton's claims against her because Burton failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 18, PageID.104-11). Specifically, Rabish faults Burton for failing to attempt to resolve the matter directly with her prior to filing the grievance. The Court disagrees that Rabish is entitled to summary judgment on this argument.

### *The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85

4

(2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

### The MDOC's Exhaustion Procedures

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 18-2, PageID.115). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C).

The Policy provides that, "[p]rior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days [], unless prevented by circumstances beyond his/her control or if the issue is believed to

5

fall within the jurisdiction of Internal Affairs." (*Id.* at ¶¶ J, Q). If a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id*. at ¶¶ Q, W). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶ DD). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ HH). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.* at ¶ C).

### *Rabish Fails to Show the Absence of a Material Question of Fact as to Whether Burton Properly Exhausted his Grievance Against Her*

In her motion, Rabish argues that, though Burton pursued his grievance against her through Step III, he still did not "properly" exhaust his claim because he did not attempt to resolve the matter with her prior to filing the grievance, as required by the Policy. (ECF No. 18, PageID.103-11).[2] Rabish attaches to her motion a copy of the Policy, as well as the salient grievance documents and a summary report. (ECF Nos. 18-1 through 18-3, PageID.113-97).

---

[2] In her opening brief, Rabish also appears to argue that Burton failed to exhaust his claim against her because his grievance "was rejected at Step I and the rejection was upheld through Step III." (ECF No. 18, PageID.110). This argument lacks merit. A defendant cannot show a failure to exhaust simply by showing a grievance was "rejected." In *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2006), the court was addressing an argument that, merely because a grievance had been rejected as "duplicative" of a prior grievance, the inmate had not exhausted the second one. The court rejected that argument, explaining, "If this were the case, a prisoner would be barred from filing suit even if the grievance screener incorrectly rejects his grievance as duplicative." *Id.*

A copy of Burton's "MDOC Prisoner Step III Grievance Report" shows that Burton pursued the grievance at issue in this case through Step III while at MRF in 2019. (ECF No. 18-3, PageID.141). A copy of Burton's "Prisoner/Parolee Grievance Form" shows that in response to the question, "What attempt did you make to resolve this issue prior to writing this grievance," Burton answered that he asked to speak with a sergeant, but his request was denied. (ECF No. 18-3, PageID.164). Burton then described the incident below under his grievance, stating that Rabish slammed the cell door on his body as he was entering his cell, he stepped back out and requested to speak with a sergeant, Rabish yelled, "Get your dumb ass in your cell," and she attempted to shut the cell door on him again as he stepped through – all out of hate, retaliation, and an intent to cause him harm. (*Id.*). He stated that he "absolutely fear[ed]" for his physical safety due to "this hateful officer working in this unit" and sought Rabish's removal from MRF for assaulting him with the steel door. (*Id.*).

A copy of the MDOC's Step I "Grievance Rejection Letter" shows that Burton's grievance was rejected because: "The grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance . . . . There should be an attempt to resolve issue prior to filing a grievance. There is no evidence of this happening." (*Id.*, PageID.165). A copy of Burton's Step II "Grievance Appeal Form" shows that he appealed the rejection, arguing that he did attempt to resolve the issue by asking to speak with a sergeant, but Rabish rejected his request, telling him to "get [his] dumb ass in [his] cell" in retaliation. (*Id.*, PageID.163). The Step I rejection was reviewed in accordance with the Policy and upheld at Step II. (*Id.*). Finally, a copy of the MDOC's "Step III Grievance

7

Decision" shows that the rejection of his grievance was again upheld on appeal at Step III. (*Id.*, PageID.162).

In his response to Rabish's motion, Burton argues that, after the alleged assault, he asked Rabish to speak with her sergeant, but she responded with profanity and attempted to assault him again. (ECF No. 20, PageID.199). He asserts that, despite Rabish's attempts to manipulate the MDOC policy, the record clearly reflects in the body of his grievance that he had requested Rabish to get her sergeant so that he could try to resolve the matter. (*Id.*, PageID.199-200). He claims that his attempt at resolution was only met with more disrespect, violence, and threats, and that it was Rabish who denied him the right to resolve the matter. (*Id.*, PageID.200).

In reply, Rabish argues that Burton did not allege in his Step I grievance that he spoke with or attempted to speak with her after the incident, but only that he requested to speak to a sergeant and that his request was denied. (ECF No. 21, PageID.205-06). Thus, Rabish asserts that Burton's grievance failed to demonstrate how he attempted to resolve the issue with *her* prior to filing, so Burton failed to properly exhaust his administrative remedies. (*Id.*, PageID.206).

In sur-reply, Burton argues that, contrary to Rabish's statements, he **asked Rabish** if he could speak with her supervisor so that he could resolve the issue with her, given that a supervisor was the more appropriate official to determine how to handle a physical assault by staff. (ECF No. 22, PageID.208). He asserts that his request to speak with a supervisor was based on a strong fear that it would not have been in his best interest to discuss the matter with Rabish "by himself," given that he had allegedly just been physically assaulted

8

by her. (*Id.*). He notes that Rabish did not deny physically assaulting him and asserts that he was clearly prevented from attempting to resolve the matter by circumstances beyond his control when his request to speak with Rabish's supervisor was denied. (*Id.*, PageID.208-09).

As an initial matter, it is undisputed in this case that Burton pursued his grievance through all three steps of the grievance process. Rather, Rabish argues in her motion that Burton's grievance was not "properly" exhausted because Burton "failed to discuss the matter with [her] prior to filing the grievance" and that his failure to "properly" exhaust his administrative remedies prevented the MDOC from addressing and reviewing his claims on the merits. (ECF No. 18, PageID.103, 111). The Court disagrees.

Because Rabish bears the burden of proving non-exhaustion, she must show that there is no material question of fact as to whether Burton failed to properly attempt to resolve the matter with her prior to filing his grievance. As discussed below, Rabish fails to meet her burden.

Here, viewing the evidence and drawing all reasonable inferences in favor of Burton as the non-moving party, the record reflects that, after the alleged assault, Burton made a request ***to Rabish*** that she call in a sergeant to resolve the issue. (ECF No. 18-3, PageID.163-64). Rabish denied Burton's request and responded by yelling at Burton to "[g]et [his] dumb ass in [his] cell" before attempting to slam the cell door on him a second time. (ECF No. 18-3, PageID.164). While Rabish apparently would have preferred that Burton engage her directly in a one-on-one discussion about his complaint, the Policy does not specify such a method for attempting to resolve disputes with an alleged wrongdoer.

9

Indeed, careful review of the Policy reveals that there are no provisions defining the parameters of what qualifies as an "attempt to resolve the issue with the staff member involved." Specifically, the Policy contains two provisions addressing the grievance process at issue in this case, which provide, in relevant part:

Reasons For Rejection

J.    Prisoners and parolees are required to file grievances in a responsible manner. A grievance shall be rejected by the Grievance Coordinator if . . . [t]he grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of Internal Affairs in the Office of Executive Affairs . . . .

\* \* \* \*

Grievance Process

Q.    Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs. If the issue is not resolved, the grievant may file a Step I grievance.

(ECF No. 18-2, PageID.115, ¶¶ J, Q).

Reading these provisions makes clear that Burton was required to attempt to resolve the alleged assault with Rabish, but they notably do not speak to what constitutes an "attempt to resolve." Taken in the light most favorable to Burton, he did attempt to resolve the issue with Burton – by asking her to bring in a sergeant.

Moreover, Rabish, who bears the burden of proving non-exhaustion, provides no argument or evidence showing what constitutes a "proper" attempt at resolution, let alone why Burton's request to Rabish that she bring in a sergeant to address the matter was an

10

improper one. Indeed, Burton's sur-reply indicates that the reason for his request was because he strongly feared that attempting to resolve the matter alone "by himself" with the alleged assailant would not have been safe – a fear consistent with allegations in his Step I grievance that Rabish yelled profanity and attempted to assault him a second time in response to his request. (ECF No. 18-3, PageID.163-64; ECF No. 22, PageID.208). There is otherwise no evidence in the record that Burton was seeking to bypass communications with Rabish altogether or would not have attempted to resolve the issue further with Rabish in the presence of a sergeant.

Second, courts have concluded that a grievant must at least attempt to resolve the issue with the alleged wrongdoer involved, but he is not required to successfully resolve the issue or engage only in attempts that would likely lead to a successful resolution. In *Lyles v. Papendick*, No. 19-10673, 2020 WL 6390494, at *7-8 (E.D. Mich. May 8, 2020), *report and recommendation adopted*, No. 19-10673, 2020 WL 5557649 (E.D. Mich. Sept. 17, 2020), the court was addressing a plaintiff's argument that he did not make any attempts to resolve his health grievances with the staff members involved because it would have been futile to do so. The court rejected that argument, explaining that, even if an attempt at resolution may have been futile or fruitless, "prison grievance rules require the grievant to *attempt* to resolve the issue." Thus, the court concluded that the plaintiff's claim was unexhausted because, while "[t]he rule does not require that the grievant successfully resolve the issue or only take steps that would likely lead to successful resolution," the plaintiff did not state *any* attempt to resolve his health issues before filing his grievance.

Here, unlike the plaintiff in *Lyles*, who had not attempted at all to resolve the issue

11

with the involved official, Burton's Step I grievance alleges that he spoke to Rabish after the assault, he asked Rabish to bring in her sergeant to help resolve the issue, and Rabish denied his request. (ECF No. 18-3, PageID.164). Though Rabish may disagree with Burton's *approach* in attempting to resolve the issue with her, she has presented no argument or evidence showing that his request to her did not at least constitute an *attempt* to seek a resolution, much less that his attempt was improper under the Policy. Accordingly, there at least remains a material question of fact as to whether Burton attempted to resolve the issue with Rabish prior to filing his grievance.[3]

For all of these reasons, Rabish has not established that there is no genuine issue of material fact as to whether Burton properly exhausted the MDOC's grievance process with respect to his claims against her. Accordingly, Rabish's motion for summary judgment on exhaustion grounds should be denied.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Rabish's Motion for Summary Judgment **(ECF No. 18)** be **DENIED**.

Dated: July 30, 2021　　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[3] To the extent Rabish contends that Burton should have done something more after she denied his request for a sergeant, it is reasonable, viewing matters in the light most favorable to Burton, to find that Rabish's denial of his request and her alleged second attempted assault in response to his initial attempt as resolution, constituted a "circumstance beyond [Burton's] control" which prevented him from approaching Rabish again.

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 30, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager